IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

NATHANIEL T. THORNTON,

        Plaintiff,

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

        Defendant.

Case No. 3:15-cv-01038-AA
OPINION AND ORDER

Nelson Hall
Bennett, Hartman, Morris & Kaplan, LLP
210 S.W. Morrison Street, Suite 500
Portland, Oregon 97204
    Attorney for plaintiff

Janice E. Hébert
United States Attorney's Office
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97201

Page 1 - OPINION AND ORDER

Heather L. Griffith
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104
    Attorneys for defendant

AIKEN, Judge:

Plaintiff Nathaniel T. Thornton brings this action pursuant to the Social Security Act ("Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied plaintiff's applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). For the reasons set forth below, the Commissioner's decision is affirmed.

## BACKGROUND

Born December 7, 1972, plaintiff was 34 on the alleged disability onset date and 40 on the date of his disability hearing. Tr. 30. He has worked as a cashier, customer care professional, and technical support representative. Tr. 214. He started a technical support business called "Dragonfly Tech" in 2002, but the business failed in 2004. Tr. 47, 323.

In November 2006, plaintiff was laid off from a technical support job at InFocus after his position was outsourced. Tr. 289. Plaintiff worked for InFocus for approximately two and a half years before he was laid off. Tr. 303. At InFocus, he had significant problems with attendance and punctuality. *See* Tr. 292-93 (documenting eight absences and thirty-six instances of tardiness in an eight-month period). After he was laid off, he worked for three months as a DJ at a strip club. Tr. 49. He quit in October 2007 because being at the strip club was "too much." Tr. 49.

At that point, plaintiff became the primary caregiver for his son. Tr. 49-50, 332. His partner, Lara Lohne, got a job around the time he left the strip club; he considered this "like fate was like saying okay, well maybe you should be the dad[.]" Tr. 49. He describes himself as a "helicopter parent" who watches his son all the time. Tr. 50. His son is autistic and requires "a lot more hands-on" care than other children his age. Tr. 50. Plaintiff worked part-time from home as a technical support representative from 2010 to 2013. Tr. 33-35.

Page 2 - OPINION AND ORDER

In November 2011, plaintiff applied for SSI and DIB. Tr. 167, 174. He alleged disability beginning October 19, 2007 due to a host of mental impairments, including anxiety, panic attacks, and agoraphobia. Tr. 37, 53, 167, 174, 252. His applications were denied initially and upon reconsideration. Tr. 70, 75, 88, 100. On November 13, 2013, a hearing was held before an Administrative Law Judge ("ALJ"). Tr. 27, 147. Plaintiff, represented by counsel, testified, as did a vocational expert ("VE"). Tr. 26-27. On May November 21, 2013, the ALJ issued an unfavorable decision. Tr. 20. After the Appeals Council denied his request for review, plaintiff filed a complaint in this Court. Tr. 1.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based upon proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522 (9th Cir. 2014) (internal quotation marks omitted). The court must weigh "both the evidence that supports and the evidence that detracts from the ALJ's" decision. *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). If the evidence is susceptible to more than one interpretation but the Commissioner's decision is rational, the Commissioner must be affirmed, because "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## COMMISSIONER'S DECISION

The initial burden of proof rests upon the plaintiff to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

Page 3 - OPINION AND ORDER

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1502(a)(4). At step one, the ALJ found plaintiff engaged in "substantial gainful activity" from January 1, 2011 to March 31, 2012. Tr. 11, 13; 20 C.F.R. §§ 404.1520(a)(4)(i), (b). The ALJ accordingly defined the "period under review" as April 1, 2012 through December 31, 2012, plaintiff's date last insured.[1] Tr. 11, 13. At step two, the ALJ found plaintiff suffers from severe anxiety disorder. Tr. 13; 20 C.F.R. §§ 404.1520(a)(4)(ii), (c). At step three, the ALJ determined plaintiff's impairment did not meet or equal a listed impairment under the regulations such that plaintiff should be deemed presumptively disabled. Tr. 14; 20 C.F.R. §§ 404.1520(a)(4)(iii), (d).

The ALJ found plaintiff retained the residual functional capacity ("RFC")

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: he should only have brief superficial interactions with co-workers and the general public; he should be in a structured work environment with clear expectations regarding job requirements; and he would do better with more complex jobs rather than simple jobs, i.e., he would not do well with simple work.

Tr. 15; 20 C.F.R. § 404.1520(e). At step four, the ALJ concluded plaintiff could not perform any of his "past relevant work." Tr. 18, 20 C.F.R. §§ 404.1520(a)(4)(iv), (f). At step five, the ALJ found plaintiff could perform a number of jobs existing in significant numbers in the national economy, including inventory clerk, return clerk, and circuit board assembler. Tr. 19, 20 C.F.R. §§ 404.1520(a)(4)(v), (g). The ALJ found plaintiff not disabled and denied his application for benefits. Tr. 19.

## DISCUSSION

All plaintiff's arguments focus on the ALJ's formulation of the RFC. Plaintiff contends the ALJ erred by (1) discrediting plaintiff's subjective symptom testimony; (2) discrediting the lay

---

[1] Although the ALJ defined the period under review to begin April 1, 2012, she ultimately concluded plaintiff had not been disabled from October 19, 2007 through the date of her decision. Tr. 19. The ALJ did not explain why she excluded October 19, 2007 through December 31, 2010 when defining the period under review. For the purposes of this opinion, the period under review includes October 19, 2007 to January 1, 2011 *and* April 1, 2012 to December 31, 2012.

Page 4 - OPINION AND ORDER

witness statement of plaintiff's partner, Lara Lohne; and (3) improperly resolving conflicts in the medical evidence. I address each contention in turn.

I.     *Plaintiff's Subjective Symptom Testimony*

Plaintiff contends the ALJ erred in her evaluation of his subjective symptom testimony. Specifically, plaintiff argues the ALJ failed meet her duty to identify which specific testimony she was discrediting. Plaintiff also avers the ALJ's general reasons for discrediting his testimony are unsupported by substantial evidence.

> In evaluating subjective symptom testimony, the ALJ must engage in a two-step process.
>
> First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. Second, if the claimant has produced that evidence, and the ALJ has not determined that the claimant is malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms.

*Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (citations and quotation marks omitted). If the ALJ rejects subjective symptom testimony, she must "specifically identify the testimony" found not credible. *Id.*

In a written function report, plaintiff alleged he finds it mentally exhausting to leave his house. Tr. 249. He does dishes but cannot cook or do most other chores, as they trigger his anxiety. Tr. 251. He does not go outside because "people are scary" and "outside is not safe." Tr. 252. He fears "[o]pen spaces, alien technology, emotional people, loud people, [and] police/military corruption." Tr. 255. At the hearing, plaintiff elaborated that he finds it very difficult to leave his home because the "people" and "unpredictability" make it too stressful. Tr. 42. He is able to go to the grocery store, but he stays the "minimum amount of time" and adheres to a "route" with "maximum efficiency." Tr. 42. He estimates he must expend "double to triple the amount of mental energy" required of a "normal person" to complete tasks. Tr. 46. He has "difficulty going to places that [he] ha[s]n't been before." Tr. 47. He has panic attacks "every three to four weeks," but had them "[w]eekly" when he was working. Tr. 53. The attacks last "four to six hours" and make him "feel like [he is] dying." Tr. 53.

Page 5 - OPINION AND ORDER

The ALJ found plaintiff's anxiety "could reasonably be expected to cause some of the alleged symptoms." Tr. 16. However, she found plaintiff's "allegation that his is incapable of all work activity" unconvincing for three reasons. Tr. 16.

First, the ALJ noted the timing of plaintiff's purported disability onset date and his immediate transition to being a full-time parent for his young son. The ALJ found the timing raised questions about plaintiff's "motivations, and whether his failure to work has more to do with the desire to stay at home and raise his child, rather than the inability to perform basic work-related activities because of his alleged impairments." Tr. 17. Relatedly, the ALJ found plaintiff's ability to care full-time for a special needs child "suggests abilities consistent with the capacity to perform basic work-related activities." Tr. 17.

Second, the ALJ found that although there was "an obvious mental health impairment that causes" plaintiff "some hardship," the medical records undermined plaintiff's testimony about the type and severity of his symptoms. Tr. 17. The ALJ noted that plaintiff had cycled through a number of mental health providers, and that many of those providers noted plaintiff's symptoms were vague and made diagnosis difficult. One doctor, after reviewing plaintiff's records, concluded he was systematically presenting different constellations of symptoms to different healthcare providers in search of various diagnoses to support his disability application. The ALJ noted the absence of any longitudinal treatment relationship addressed to any of his problems other than his anxiety disorder.

Third, the ALJ cited plaintiff's failure to take medication to address his symptoms despite multiple providers recommending medication. She stated that "[w]ith adequate treatment, some individuals with chronic mental disorders not only to have their symptoms and signs ameliorated, but they also return to a level of function close to the level of function they had before they developed symptoms or signs of their mental disorders." Tr. 17. Although the ALJ did not give plaintiff's failure to try any medication for longer than two days "conclusive" weight, she found "his reluctance to even give psychiatric medications an opportunity strongly suggests he has no interest

in achieving medical and functional improvement." Tr. 17.

I conclude the ALJ's lack of specificity in discrediting plaintiff's testimony does not require reversal. The requirement to "specifically identify" the testimony being discredited derives from the requirement to review the reasoning of an agency's decision rather than that decision's end result. *Treichler*, 775 F.3d at 1102. A reviewing court may not "substitute [its] conclusions for the ALJ's, [n]or speculate as to the grounds for the ALJ's conclusions." *Id.* at 1103. Nonetheless, a decision explained with "less than ideal clarity" may be upheld so long as "the agency's path may reasonably be discerned." *Id.* at 1099 (citing *Alaska Dep't of Envtl. Conservation v. Envtl. Prot. Agency*, 540 U.S. 461, 497 (2004) (quotation marks omitted)).

The ALJ discredited plaintiff's testimony "he can do no work at all." Tr. 18. She also took pains to explain it was "evident" plaintiff suffered from "severe health impairments" that limited his ability to function. Looking to plaintiff's statements in the record and the limitations the ALJ included in the RFC, the only reasonable interpretation of these two statements together is as discrediting statements that plaintiff could not leave the house at all while crediting more specific limitation statements, for example regarding plaintiff's difficulty with crowds and new, unpredictable situations. The ALJ could have been clearer in identifying the testimony she was discrediting. Nonetheless, because the reasoning underlying her decision can be discerned, the decision's "less than ideal clarity" is not a ground for reversal. *Treichler*, 775 F.3d at 1099.

I further conclude the ALJ's decision to give limited weight to plaintiff's subjective symptom testimony is supported by substantial evidence. An ALJ permissibly may consider "daily activities involving skills that may be transferred to the workplace" and "unexplained, or inadequately explained, failure to seek treatment or to follow a prescribed course of treatment" in deciding how much weight to give a plaintiff's subjective symptom testimony. *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (en banc) (quotation marks omitted). The ALJ reasonably concluded full-time parenting of a special needs child showed plaintiff possessed skills transferrable to a job. The ALJ also reasonably interpreted plaintiff's frequent transitions from mental health provider to mental

Page 7 - OPINION AND ORDER

health provider and failure to try to treat his symptoms with medication to mean he was not serious about getting better. The ALJ's conclusions are not compelled by the record; there are other ways to interpret plaintiff's activities of daily living and treatment choices. But the question is not whether an ALJ's determination is the *only* reasonable interpretation of the evidence, but whether that determination is a plausible interpretation of the evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Because the ALJ's interpretation meets that standard, it must be affirmed.

II.     *Lohne's Third-Party Function Report*

Plaintiff next challenges the ALJ's decision to discredit a third-party function report filled out by Lohne. Lohne stated plaintiff's anxiety and paranoia make it "nearly impossible" for him to be around others. Tr. 234. The ALJ concluded the report appeared to be "colored by [Lohne's] affection" for plaintiff and found Lohne had insufficient motivation to give an objective assessment. Tr. 15.

Lay testimony from family members and friends is "competent evidence that an ALJ must take into account." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). An ALJ may discredit lay testimony regarding a claimant's symptoms only if she supports her decision with "reasons germane to each witness." *Id.* An ALJ may not question the candor of a lay witness simply because the witness shares a close personal or emotional relationship with the claimant. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) ("[I]nsofar as the ALJ relied on characteristics common to all spouses, she ran afoul of our precedents.").

Here, however, specific evidence supports the ALJ's conclusion. In March 2011, plaintiff was investigated by the Cooperative Disability Investigations Unit on suspicion of attempting to fraudulently obtain disability benefits. Tr. 339. When agents went to plaintiff's home looking for him, Lohne told them plaintiff was not home and would not be back for "several hours." Tr. 343. As the agents left the house, they received a phone call from plaintiff, who revealed he was working upstairs. Tr. 344. When the agents returned to the house, Lohne "apologized for having lied" and explained she feared plaintiff was going to be arrested. Tr. 344.

Page 8 - OPINION AND ORDER

The ALJ rationally concluded Lohne's willingness to lie to government agents to protect plaintiff from being arrested suggested a willingness to exaggerate plaintiff's symptoms to help him obtain disability benefits. The ALJ did not err in discrediting Lohne's statement.

III.    *Weighing Medical Evidence*

Finally, plaintiff argues the ALJ erred in omitting from the RFC limitations suggested in a series of psychological evaluations. Plaintiff contends the limitations must be included in the RFC because the ALJ partially discredited the opinions of plaintiff's examining physicians without specific, legitimate reasons for doing so.

An ALJ must consider all medical opinions in the record. 20 C.F.R. § 404.1527(b). "When evaluating the medical opinions of treating and examining physicians, the ALJ has discretion to weigh the value of each of the various reports, to resolve conflicts in the reports, and to determine which reports to credit and which to reject." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007). Although the opinions of treating physicians are given deference, the ALJ may reject them for "specific, legitimate reasons" if "they are contradicted by the opinion of a non-treating physician." *Id.*

The medical records in this case are riddled with conflict and ambiguity. In August and October 2010, Dr. Carter evaluated plaintiff. Tr. 328. Dr. Carter found "predominant aspects of [plaintiff's] profile" were "Eccentric Cluster Personality Features (with related cognitive distortions/paranoia, social difficulties, and emotional dysregulation) and acute anxiety-related problems, including likely post-traumatic stress." Tr. 334. Dr. Carter concluded "these difficulties affect his daily ability to function within the normal constraints of working society, interact with others at work appropriately and maintain a consistent persistence and pace that is necessary to maintain employment." Tr. 336. The record contains no evidence of further treatment with Dr. Carter.

In March 2012, Dr. Spangler treated plaintiff on three occasions over the course of about two months. In his initial evaluation, Dr. Spangler diagnosed possible "panic disorder with

Page 9 - OPINION AND ORDER

agoraphobia," possible anxiety disorder, and possible schizotypal personality disroder. Tr. 360. Dr. Spangler emphasized that these diagnoses could not be "confirmed with one visit." Tr. 360. After the third visit, Dr. Spangler opined plaintiff had a "very atypical collection of symptoms" and "atypical reaction[s]" to medication. Tr. 461. Dr. Spangler did not provide any opinion about workplace limitations in his treatment notes.

For about six months in late 2011 and early 2012, plaintiff participated in counseling with a Qualified Mental Health Professional at Dr. Spangler's clinic. Tr. 365-71, 463-50. The counseling notes do not clarify plaintiff's diagnoses except to consistently document problems with anxiety.

In July 2012, Dr. Alvord examined plaintiff on a referral from the state disability office. Dr. Alvord concluded a definitive diagnosis was "difficult" due to plaintiff's "vague symptoms." Tr. 337. He diagnosed schizoaffective disorder (bipolar type), dissociative identity traits, and schizoid personality traits. Tr. 377. Dr. Alvord noted plaintiff was functioning occupationally, "suggest[ing] he has been able to keep his symptoms in check on some level." Tr. 377.

Between November 2012 and August 2013, plaintiff attended monthly cognitive therapy appointments to treat anxiety and depression. Tr. 413-34.

In February 2013, Dr. Fishman conducted a psychological evaluation of plaintiff. Tr. 400. Dr Fishman diagnosed Asperger's syndrome, post-traumatic stress disorder with panic/agoraphobia, bipolar disorder, and schizotypal personality features. Tr. 407. Dr. Fishman opined plaintiff has "adequate cognitive abilities to function successfully in a competitive work environment, but treatment and accommodations ... will be necessary" to increase the likelihood of maintaining long-term employment. Tr. 408. He recommended a variety of workplace modifications, including placement in a work setting where "minimal social interaction is required" and a "stable, consistent environment" with "clear expectations and chain of command." Tr. 408.

In short, over the course of three years, plaintiff received sometimes-overlapping, sometimes-conflicting diagnoses and treatment recommendations from six different doctors and other mental health professionals. The doctors disagreed not only over the correct diagnosis but also over whether

plaintiff would be able to function in a work environment. The ALJ had a duty to resolve these conflicts, determine which of plaintiff's impairments (if any) were severe, and extract concrete work limitations to be incorporated into the RFC. The ALJ resolved the conflicts by looking to yet another medical opinion in the record, that of a non-examining physician employed by the State of Oregon Department of Human Resources Vocational Rehabiliation Division, Dr. Ude. Tr. 14. Dr. Ude reviewed the mental health evaluations described above and concluded plaintiff "definitely has mental health issues, but . . . is systematically presenting symptoms of first one disorder, and then another, completely different disorder, at various mental health centers, hoping to get 'proof' of one or more disorders." Tr. 506. The ALJ gave "great weight" to Dr. Ude's opinion and "some weight" to the opinions of the examining and treating physicians. Tr. 12, 14. She determined Dr. Ude's quest-for-a-diagnosis theory supplied "[p]erhaps the best" explanation of the conflicting diagnoses, changing symptoms, and brief treatment histories with each provider. Tr. 14. Although that determination is not the only possible way to read the record, it is rational and as such must be upheld.

The ALJ concluded the record as a whole supported finding anxiety disorder was a severe impairment and incorporated into the RFC limitations from the examining and treating physicians that related to plaintiff's anxiety (including related panic and agoraphobia). The limitations to "brief superficial interactions with coworkers and the general public" and a "structured work environment with clear expectations regarding job requirements" closely track the workplace limitations recommended by Dr. Fishman, for example. *Compare* Tr. 16 *with* Tr. 408. This selective incorporation of workplace limitations from the examining doctors' medical opinions is consistent with the ALJ's decision to give "some weight" to those opinions. Because the ALJ permissibly relied on Dr. Ude's opinion to view plaintiff's reported symptoms with skepticism, she was not required to incorporate all limitations suggested by each doctor into the RFC.

## CONCLUSION

The Commissioner's decision is AFFIRMED and this case is dismissed.

IT IS SO ORDERED.

Dated this 5 day of September 2016.

_____
Ann Aiken
United States District Judge